IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal Action No. **3:14-CR-7-L** |
| | § | |
| **MARCUS DEMOND ALBERTY** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Suppress (Doc. 22), filed on April 11, 2014. Defendant Marcus Demond Alberty ("Mr. Alberty" or "Defendant") seeks to suppress all evidence seized by Dallas police during searches of his person and vehicle at approximately one a.m. in the morning on August 1, 2013. Mr. Alberty contends that the searches of his person and vehicle by Dallas police officers Richard Cantu and Matthew Chatman were unlawful because they did not have probable cause to detain him.[*]  On May 15, 2014, the court held an evidentiary hearing on the Motion to Suppress, and five witnesses testified, including Officers Cantu and Chatman; Defendant; and two individuals (Nellie Hamilton and Gregory McGee), who reside on Grinnell Street, Dallas, Texas, where Defendant was detained and his vehicle searched. After carefully considering the motion, response, briefs, evidence, applicable law, witness testimony, and the oral arguments of counsel, the court **denies** Defendant's Motion to Suppress (Doc. 22).

---

[*] In his Motion to Suppress, Defendant maintains that the police officers were required to have probable cause before detaining him and does not address whether reasonable suspicion for the detention existed. The court, nevertheless, addresses in this order the reasonable suspicion standard, as well as the probable cause standard, as both are applicable to the court's analysis and resolution of Defendant's motion.

**Memorandum Opinion and Order – Page 1**

I.      **Factual and Procedural Background**

During the evidentiary hearing on the Motion to Suppress, the parties offered slightly different accounts of the events that led to Defendant's detention and the subsequent warrantless search of his vehicle. Their accounts and contentions are summarized below.

A.      **Defendant's Version of Events and Contentions**

According to Mr. Alberty, he first encountered Dallas police officers Cantu and Chatman on the morning of August 1, 2013, near a convenience store located in South Dallas, a few blocks from Grinnell Street. Mr. Alberty testified that, after seeing the vehicle he was driving, a white Dodge Charger, the officers "busted" a "U-turn" and followed him to 1522 Grinnell Street, where he pulled into and parked in the driveway of the residence. Mr. Alberty further testified that as he exited the driver's side of his vehicle and began walking toward the front of his vehicle in the direction of the residence, Officers Cantu and Chatman drove up in a marked patrol car with the passenger window rolled down. Mr. Alberty testified that the patrol car stopped in the street in front of 1522 Grinnell, blocking the driveway entrance at the residence where he was parked.

Consistent with the officer's testimony, Mr. Alberty testified that the officer on the side of the patrol car closest to him (Officer Chatman) asked, "Excuse me, do you live here?" Mr. Alberty responded "No" and explained that he was picking up his daughter. Mr. Alberty testified that Officer Chatman then asked him to approach the patrol car, which was located no more than fifteen feet away, asked for his name and instructed him to sit in his vehicle, presumably while they ran his name for warrants. During this time, the officers, according to Mr. Alberty, were still in their patrol car. Mr. Alberty testified that, after a few seconds, the officers came to the driver's side of his vehicle and told him and the female passenger to get out and stand in front of the patrol car with their hands

**Memorandum Opinion and Order – Page 2**

on the hood. At this point, Officer Chatman asked Mr. Alberty for identification, searched his person, and asked Mr. Alberty if he had been smoking marijuana. Mr. Alberty testified that he told the officer he had not been smoking or drinking. In addition, Mr. Alberty stated that Officer Chatman searched his vehicle, although he had declined the officer's request for permission to search the vehicle. Mr. Alberty testified that he did not see what Officer Chatman found during the search because, by this time, he had been placed inside the patrol car.

Grinnell Street residents Nellie Hamilton and Gregory McGee, who came out of their homes to see what was going on, similarly testified that Mr. Alberty's vehicle was parked in the driveway of 1522 Grinnell Street, and that he would not have been able to leave because the officers' patrol car was blocking the entrance of the driveway. Based on this testimony, Mr. Alberty contends that he was detained and prevented from leaving the premises even though the officers had not witnessed him commit a crime or do anything suspicious up to this point. Mr. Alberty further asserts that Officer Chatman's command to him to approach and place his hands on the hood of the patrol car resulted in a detention that violated his constitutional rights. Additionally, Mr. Alberty contends that since the officers' contact with him was outside of his vehicle and all safety concerns for the officers had been resolved, there was no reason to search the interior of his vehicle.

**B.     Police Officers' Version of Events and the Government's Contentions**

The police officer's account of what transpired prior to Mr. Alberty's detention and the search of his vehicle varies in certain respects. The officers do not dispute that Mr. Alberty was detained or that his vehicle was searched but contend that the detention and search were lawful because both occurred after they smelled a strong odor of marijuana coming from the open door of Mr. Alberty's vehicle. Both officers testified that they first encountered Mr. Alberty and his vehicle on Grinnell Street while performing a routine patrol of the area and street, on which three known

**Memorandum Opinion and Order – Page 3**

drug houses were located. The officers were looking for suspicious activity such as vehicles parked in front of the drug houses or people leaving the drug houses. The officers denied seeing Mr. Alberty earlier that evening or following him. According to both officers, they were traveling south on Ramona Avenue and turned east on Grinnell Street when they first observed Mr. Alberty's vehicle, which was facing east and parked halfway on the street and grass in front of 1522 Grinnell Street. The officers testified that they immediately noticed Mr. Alberty's vehicle and were suspicious because the lights to the vehicle were turned off or "blacked out" as soon as they turned onto Grinnell in a marked patrol car.

The officers ran a registration search for Mr. Alberty's vehicle and learned that the vehicle was not registered to anyone with a Grinnell Street address. The officers, while still in their patrol car, slowly approached Mr. Alberty's vehicle from behind and shined a spot light on it but were unable to see inside the vehicle because of the dark tinting on the vehicle's windows. The officers then observed Mr. Alberty exit the driver's door of the white Dodge Charger and begin walking around the front of the vehicle in the direction of the residence at 1522 Grinnell Street. The officers testified that they proceeded to pull up alongside of Mr. Alberty's vehicle, and Officer Chatman asked Mr. Alberty how he was doing and whether he lived in one of the houses. Both officers testified that Mr. Alberty said he was there to pick up his daughter as he pointed to the residence at 1522 Grinnell Street, as well as the house next door. The officers denied blocking Mr. Alberty's vehicle. They also disagreed that Mr. Alberty's vehicle was parked in the driveway of 1522 Grinnell Street rather than on the street in front of the residence.

Officer Chatman indicated that he was on the passenger side of the patrol car with his window rolled down when they pulled up alongside of Mr. Alberty's vehicle and began talking to Mr. Alberty. Both officers testified that they immediately smelled a strong odor of marijuana smoke

**Memorandum Opinion and Order – Page 4**

coming from the driver's door of Mr. Alberty's vehicle, which was still open. Officer Chatman testified that after smelling the marijuana, he and Officer Cantu got out of their vehicle, and directed Mr. Alberty to come to the patrol car so they could further investigate. Officer Chatman asked Mr. Alberty if he had been smoking marijuana that night, and, according to Officer Chatman's testimony, Mr. Alberty responded affirmatively.

While Officer Chatman continued to talk to Mr. Alberty, Officer Cantu asked the female passenger in Mr. Alberty's vehicle to exit the vehicle, and Mr. Alberty and the female passenger were both directed to place their hands on the hood of the patrol car. Officer Cantu testified that after Mr. Alberty was detained, Ms. Hamilton and another neighbor confirmed that they did not recognize Mr. Alberty. Ms. Hamilton testified similarly that she had informed the officers that she and another neighbor did not recognize Defendant. In addition, Ms. Hamilton confirmed that when she came outside, the door to Mr. Alberty's vehicle was open.

According to the officers, Mr. Alberty was subsequently handcuffed and placed in the patrol car while Officer Chatman searched the vehicle where he located a bag with a small amount of marijuana in the driver's side floorboard, 13 empty plastic baggies from the driver's door compartment, and a .38 caliber handgun in a sunglass holder. Mr. Alberty was arrested by Officers Cantu and Chatman, but no details regarding the arrest appear in the parties' briefs or the record. The record in this case reflects that Mr. Alberty was charged in a one-count federal indictment for Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(e) on January 7, 2014. A warrant was subsequently executed for Mr. Alberty's arrest, and he was ordered detained pending disposition of this case.

In its response to the Motion to Suppress, the Government maintains that the officers' initial encounter with Mr. Alberty was voluntary or consensual. The Government contends that, after

**Memorandum Opinion and Order – Page 5**

smelling a strong odor of marijuana coming from Mr. Alberty's vehicle, the officers had probable cause to detain Mr. Alberty and conduct a warrantless search of his vehicle because they believed he might be committing a crime. For support that the detention and warrantless search were lawful, the Government cites: (1) *United States v. McCrary*, 543 F.2d 554 (5th Cir. 1976), for the proposition that "the odor of marijuana emanating from the vehicle gave the officer probable cause to detain McCrary and conduct the search."; (2) *United States v. McSween*, 53 F.3d 684 (5th Cir. 1995), for the proposition that "it is well settled that warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime."; and (3) *United States v. Young*, 544 F. App'x 276 (5th Cir. 2013), for the proposition that "the smell of marijuana alone may constitute probable cause to search a vehicle." Government's Resp. 3-4.

The Government does not specifically address in its response Defendant's contention that he was unlawfully detained or seized when the officers blocked the driveway with their patrol car without probable cause to believe he had committed any crime. During the hearing on Defendant's motion, however, the Government indicated that even if the officers parked in front of the driveway so as to block it, the detention and search of Defendant's vehicle was proper because the officers testified that they smelled a strong odor of marijuana coming from Defendant's vehicle. The Government acknowledged that resolution of this issue turns on whether and when the officers smelled the marijuana coming from Mr. Alberty's vehicle.

## II.   Applicable Legal Standard

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Not all encounters between law enforcement officers and citizens, however, are considered seizures for purposes of the Fourth Amendment. *United States v. Mask*, 330 F.3d

330, 336 (5th Cir. 2003) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). A voluntary or consensual encounter between a law enforcement officer and a citizen may ripen into a seizure, "triggering the Fourth Amendment and requiring officers to be able to articulate reasonable suspicion or probable cause, only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of [the] citizen." *Id.* at 336 (internal quotation marks omitted). A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mask*, 330 F.3d at 336 (quoting *Immigration and Naturalization Serv. v. Delgado*, 466 U.S. 210, 215 (1984)). The "reasonable person standard is objective, and is concerned not with the citizen's subjective perception or the officers' subjective intent, but only with what the officers' words and actions would have conveyed to a reasonable and innocent person." *Mask*, 330 F.3d at 336 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 576 n.7 (1988)) (internal quotation marks omitted).

A law enforcement officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). When an officer detains a person without a warrant, the government has the burden that reasonable suspicion existed for the detention. *United States v. Gomez*, 623 F.3d 265, 269 (5th Cir. 2010). Objectively reasonable suspicion exists when an officer "can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry*, 392 U.S. at 21. The court looks at the "totality of the circumstances" of the case in determining whether an officer had a particularized and objective basis for suspecting legal wrongdoing. *Sokolow*, 490 U.S. at 8. The level of suspicion required for a *Terry* investigative detention "is considerably less than proof of wrongdoing by a preponderance of the

**Memorandum Opinion and Order – Page 7**

evidence" and "obviously less demanding than that for probable cause." *Id.* at 7.  Whether a *Terry* stop is reasonable is determined by considering: (1) "whether the officer's action was justified at its inception," and (2) "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc) (citing *Terry*, 392 U.S. at 19-20).

Absent consent, probable cause must exist for a law enforcement officer to search a vehicle without a warrant. *See United States v. Petty*, 601 F.2d 883, 890 (5th Cir. 1979). "An automobile's mobility is an exigent circumstance permitting a search without a warrant so long as there is probable cause." *Id.* Less rigorous warrant requirements also apply to automobiles because of the reduced expectation of privacy in automobiles. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *California v. Carney*, 471 U.S. 386, 390-91 (1985).  Consequently, "[e]ven in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception" to the warrant requirement*. Id.* at 91.

"[P]robable cause means 'a fair probability that contraband or evidence of a crime will be found.'" *Sokolow*, 490 U.S. at 8 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  Probable cause exists when "the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offence has been (or is being) committed." *Petty*, 601 F.2d at 890 (internal quotation marks and citation omitted).  Thus, a warrantless search of an automobile is constitutionally permissible if an officer has probable cause to believe the vehicle contains illegal contraband. *Labron*, 518 U.S. at 940; *Carroll v. United States*, 267 U.S. 132, 153 (1925).  In determining whether probable cause exists to believe that a vehicle contains contraband, courts "look to the totality of the circumstances and the inferences that flow therefrom." *Petty*, 601

F.2d at 890. "[T]he smell of marihuana alone [by officers experienced in drug detection] may constitute probable cause to search a vehicle." *See, e.g., United States v. Ibarra–Sanchez*, 199 F.3d 753, 760 (5th Cir. 1999) ("This Court has consistently held that the smell of marihuana alone may constitute probable cause to search a vehicle."); *United States v. McKeever*, 906 F.2d 129, 132 (5th Cir. 1990) ("Distinctive odors, detected by those qualified to know them, may alone establish probable cause.").

### III.  Analysis

The court has carefully reviewed the evidence, the testimony, and transcript of the evidentiary hearing. The court's resolution of the Motion to Suppress turns in large part on the credibility of the witnesses. In assessing the credibility and believability of each witness, the court considered all of the circumstances under which the witness testified, including: the interest, if any, the witness has in the outcome of the case; the witness's appearance, demeanor, and manner of testifying while on the witness stand; the witness's apparent candor and fairness, or the lack thereof; the reasonableness or unreasonableness of the witness's testimony; the opportunity of the witness to observe or acquire knowledge concerning the facts to which he or she testified; the extent to which the witness was contradicted or supported by other credible evidence; and whether such contradiction related to an important factor in the case or some minor or unimportant detail. Neither party disputes that Mr. Alberty was detained prior to the search of his vehicle, but they appear to dispute when that detention occurred during the encounter between the officers and Mr. Alberty. They also dispute whether the officers had reasonable suspicion or probable cause to support the detention and subsequent warrantless search of his vehicle.

As previously noted, Mr. Alberty contends that he was detained early on in the encounter when the police officers prevented him from being able to leave by blocking the entrance to the

driveway of 1522 Grinnell Street where his vehicle was parked. Based on the testimony of Ms. Hamilton and Mr. McGee, neither of whom has any interest in the outcome of the case, the court finds that Defendant's vehicle was parked in the driveway of 1522 Grinnell when Officers Cantu and Chatman turned east onto Grinnell and pulled up in front of the residence. The court also finds that, regardless of whether the officers intended to prevent Mr. Alberty from leaving as they pulled up in their patrol car to talk to him, the positioning of the patrol car on the street in front of the driveway blocked the entrance of the driveway where Mr. Alberty was parked. According to Ms. Hamilton and Mr. McGee, because the officers' patrol car was blocking the entrance to the driveway, Mr. Alberty would not have been able to back his vehicle out of the driveway to leave.

Even assuming that Mr. Alberty was detained due to the positioning of the patrol car blocking the driveway, the court concludes that his detention and the subsequent search of his vehicle were lawful. While the officers acknowledged that they had not observed Mr. Alberty commit any crime before they turned onto Grinnell Street, they both testified that, as a result of their training and experience in detecting the smell of marijuana, they both immediately smelled a strong odor of marijuana smoke coming from the direction of his vehicle. More importantly, Officer Chatman testified that he first smelled the marijuana smoke when the patrol car pulled up with the passenger window down as Mr. Alberty was exiting his vehicle. Mr. Alberty's testimony that he exited his vehicle as the patrol car pulled up with the passenger window down is consistent with that of the police officers. Ms. Hamilton also confirmed that Mr. Alberty did not close the door to his vehicle after getting out of his vehicle. These circumstances, combined with the relative close proximity between the vehicles, would have made it possible for the officers, both of whom had training and experience in identifying marijuana and detecting its odor, to smell marijuana coming from Mr. Alberty's vehicle if he or the passenger of his vehicle had been smoking marijuana.

Although Mr. Alberty testified that he had not been smoking marijuana that night, the court did not find his testimony in this regard credible because he was tentative and guarded in answering questions, paused and acted as if he did not understand questions that were straightforward, and many of his answers were nonresponsive, particularly those when he responded to questions regarding his use or possession of marijuana. Overall, the court finds the testimony of the officers to be more credible than that of Mr. Alberty, despite the discrepancy in the witnesses' testimony regarding the location of the patrol car and Mr. Alberty's vehicle. Moreover, Mr. Alberty's testimony, in certain important respects, bolstered the testimony of the officers.

In this regard, Mr. Alberty acknowledged that before Officer Chatman searched his vehicle, the officer specifically asked whether he had been smoking marijuana. Officer Chatman's targeted inquiry about marijuana, as opposed to other controlled substances, persuades the court that the officers detected, based on their experience and training, a strong odor of burning marijuana coming from Mr. Alberty's vehicle that prompted them to investigate. The court can also reasonably infer from the officers' testimony that, although they originally intended to only engage Mr. Alberty in a consensual encounter, the encounter quickly morphed into one justifying a detention when Officer Chatman detected a strong odor of marijuana.

In his motion and during the evidentiary hearing, Mr. Alberty focused on the police officers' "bust[ing]" a "U-turn" at a nearby convenience store and following him several blocks to Grinnell Street. Even assuming this is true, the court fails to see the legal significance of this fact because the mere following of a vehicle by law enforcement officers in no way constitutes a seizure when there is no interference with the individual's freedom of movement. Furthermore, neither Mr. Alberty's subjective perception nor the officers' subjective intent is relevant to the court's determination of whether a seizure occurred. Under the objective "reasonable person" test, the court considers only

"what the officers' words and actions would have conveyed to a reasonable and innocent person." *Mask*, 330 F.3d at 336. The court determines that a reasonable and innocent person, under the circumstances described by Mr. Alberty, would not have believed that he or she was being detained or not free to leave if law enforcement officers "busted" a "U-turn" and merely followed the person's vehicle without stopping it. Defendant's contentions in this regard are therefore without merit and irrelevant to the court's analysis of whether and when a detention occurred.

The court thus concludes that, because Officer Chatman immediately smelled an odor of marijuana smoke coming from Mr. Alberty's vehicle when the patrol car pulled up with the passenger window down as Mr. Alberty was exiting his vehicle, the officers had, at a minimum, reasonable suspicion to believe criminal activity was afoot. The contemporaneous detention of Mr. Alberty at this point for investigatory purposes was therefore justified. The strong odor of marijuana also supports a finding that the officers had probable cause to believe contraband or evidence of a crime (marijuana) would be found in Mr. Alberty's vehicle. Additionally, exigent circumstances applicable to automobiles existed, making the warrantless search of Mr. Alberty's vehicle proper.

Accordingly, Mr. Alberty's detention and the warrantless search of his vehicle were constitutional. The court will therefore deny Defendant's Motion to Suppress. Mr. Alberty also contends in his Motion to Suppress that the search of his person was unlawful; however, it does not appear that any contraband or evidence of a crime was found on his person. Thus, any search of Mr. Alberty's person is irrelevant and does not affect the court's ruling on the Motion to Suppress.

IV. **Conclusion**

For the reasons herein set forth, the court concludes, based on the totality of the circumstances in this case, together with the reasonable inferences to be drawn therefrom, that Defendant's detention, and the subsequent warrantless search of his vehicle were lawful because,

upon smelling a strong odor of marijuana smoke coming from his vehicle, the police officers had reasonable suspicion to believe criminal activity was afoot and probable cause to believe contraband or evidence of a crime would be found in the vehicle. Accordingly, the court **denies** Defendant's Motion to Suppress (Doc. 22).

**It is so ordered** this 23rd day of May, 2014.

*[signature]*
Sam A. Lindsay
United States District Judge